IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ERICA D. NORWOOD and | ) | |
| ELIZABETH D. TATE | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 7:17-cv-222 |
| | ) | |
| v. | ) | |
| | ) | |
| OAK HILL ACADEMY, | ) | By: Hon. Robert S. Ballou |
| a Virginia Corporation | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiffs Erica D. Norwood and Elizabeth D. Tate, proceeding *pro se*,[1] brought this action against defendant Oak Hill Academy ("Oak Hill") alleging violations of Norwood's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq., as well as claims for breach of contract and negligence. Before me are Oak Hill's motion to dismiss (Dkt. No. 3) and motion for summary judgment (Dkt. No. 12).[2] I waive oral argument as it will not aid in the decisional process and recommend **GRANTING** Oak Hill's motion to dismiss, but **DENYING** its motion for summary judgment.

## Background

The following facts are taken from the plaintiffs' complaint, and are accepted as true for purposes of Oak Hill's motion to dismiss. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Plaintiffs

---

[1] I note that, as a *pro se* litigant, Tate may not represent another party, including her daughter, Norwood. See Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166 (1972) (a litigant "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others"). While Tate may represent her daughter Norwood as an attorney, she has not sought to do so, nor has she sought to be admitted *pro hac vice* in this court. Accordingly, Tate cannot act on behalf of her daughter any further in this action. Doing so would violate Rule 5.5(c) of the Virginia Rules of Professional Conduct which prohibits a lawyer from practicing law in a jurisdiction in violation of the regulations of the legal profession.

[2] By order entered June 30, 2017 (Dkt. No. 7), this case was referred to me for both non-dispositive and dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).

1

allege that Norwood suffers from the "diagnosed disabilities" of attention deficit hyperactivity disorder ("ADHD")[3] and episodic psychotic depression, and that she is an individual with a disability under the ADA. Compl. ¶ 3, Dkt. No. 1. In August 2014, Tate, who is Norwood's mother, signed an Admissions Contract with Oak Hill, a private boarding school for grades eight through twelve, located in Grayson County, Virginia, and pre-paid tuition for one school year in the amount of $25,672. Compl. ¶¶ 2, 5, 15, 18. Plaintiffs emphasize that the Admissions Contract indicated Oak Hill had the right to act "in loco parentis" with respect to Norwood during the school year. Compl. ¶ 16. Norwood, then a minor, began her twelfth grade year at Oak Hill in September 2014. Compl. ¶ 17.

Norwood initially joined the girls soccer team at Oak Hill, but was removed from the team "as a disciplinary action" by Katherine Crede, the Director of Girls Residence Life. Compl. ¶ 20. Tate contacted Crede, informed her of Norwood's ADHD and episodic psychotic depression, and asked that she accommodate Norwood and allow her to return to the soccer team. Id. Plaintiffs allege that, despite being aware of Norwood's disabilities, Oak Hill and its staff engaged in the following discriminatory actions: (1) refusing to allow Norwood to play soccer; (2) objecting to Tate's requests to take Norwood to certain medical appointments related to treatment of her disabilities; (3) making an "insulting comment," specifically that Norwood was "not pretty"; (4) refusing to allow Norwood to sit with the members of the basketball team at dinner, even though other students who were not members of the team regularly ate with the team; (5) repeatedly asking Norwood to change clothes because she was "dressed inappropriately" despite being dressed similarly to other female students who had not violated the dress code; and (6) initially refusing to allow Norwood to "opt out" of taking her final exams,

---

[3] In the complaint, plaintiffs refer to Norwood's disability as "ADHD (attention deficit disorder)," and not attention deficit hyperactivity disorder. Compl. ¶ 3, Dkt. No. 1.

2

though ultimately she was permitted to do so. Compl. ¶ 23. Plaintiffs claim that Oak Hill's discriminatory actions caused Norwood to suffer an episode of psychotic depression. Tate removed Norwood after her first semester, "to recover and finish high school in a safer and non-discriminatory environment." Id.

Plaintiffs filed this action on May 15, 2017, alleging federal claims under Title III of the ADA (count I), and state law claims for breach of contract (count II), and negligence (count III). Plaintiffs assert that Oak Hill broke the "implied covenant of good faith and fair dealing" in the admissions contract, and failed to adequately perform its duties under the contract. Compl. ¶ 25. Plaintiffs further assert that Oak Hill was negligent because its agents and employees failed to exercise "reasonable care for the protection of Norwood." Id.

## Standards of Review

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff.[4] Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[4] Generally, courts also must construe *pro se* complaints liberally. Estelle v. Gamble, 429 U.S. 97, 106 (1976). However, Tate is an attorney, licensed to practice law in three states, though not licensed in Virginia. D's Rebuttal at 1–2, Dkt. No. 10, Ex. A to Dkt. No. 10. The leniency typically afforded to *pro se* litigants is not necessary when the litigant is herself an attorney. See Diprete v. 950 Fairview St., LLC, No. 1:15CV00034, 2016 WL 6137000, at *4 (W.D. Va. Oct. 21, 2016), appeal dismissed, No. 16-2335, 2017 WL 2241808 (4th Cir. May 22, 2017) (finding that because *pro se* plaintiff is an attorney no "special consideration or leniency is warranted" and collecting cases.); see also Gordon v. Gutierrez, No. 1:06cv861, 2006 WL 3760134, at *1 n.1 (E.D. Va. Dec. 14, 2006) ("Plaintiff represents that she is an attorney, a law school graduate, and a member a neighboring state's bar. As such, she is not entitled to the liberal construction of pleadings ordinarily afforded *pro se* litigants.").

alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (finding summary judgment appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

## Discussion

**I.   Oak Hill's Motion to Dismiss**

**A. Statute of Limitations**

Plaintiffs' claims fail under the ADA because the statute of limitations has run and because plaintiffs fail to allege sufficient facts to state a cause of action. Oak Hill asserts that plaintiffs had "at most" one year, from when Norwood turned 18, to bring the ADA claims. D's Rebuttal Br. at 3–4, Dkt. No. 10.[5] The statute of limitations for ADA claims in Virginia is one

---

[5] In its memorandum in support of its motion to dismiss, Oak Hill asserted that plaintiffs' claims accrued in December 2014 when Norwood left Oak Hill at the end of the Fall 2014 semester, and thus she had one year from that date to timely file her claims. Id. at 2-3, Dkt. No. 4. However, plaintiffs asserted in their reply that Norwood was still a minor when she left Oak Hill, and thus, the statute of limitations did not begin to run against Norwood until she reached age 18. Pls.' Br. in Opp. At 2, Dkt. No. 9.

4

year.[6] See Childress v. Clement, 5 F. Supp. 2d 384, 388 (E.D. Va. 1998) (holding that a one year statute of limitations should apply to claims brought under the ADA, which was modeled on the Rehabilitation Act); see also Lewis v. Aetna Life Ins. Co., 993 F.Supp. 382, 385 (E.D.Va.1998) (same); Brown v. Dep't of Corr., 2009 WL 87459, at *8 (W.D.Va. Jan. 9, 2009); Thompson v. Va. Dep't of Game and Inland Fisheries, 2006 WL 1310363, at *3 (W.D.Va. May 14, 2006), aff'd, 196 Fed. App'x 164 (4th Cir. 2006).

To protect the interest of infants lacking the capacity to bring or defend against a lawsuit, the statute of limitations does not begin to run against infants until they reach the age of majority. Va. Code. § 8.01-229(A)(1) (providing that if the person entitled to bring an action is an infant at the time the cause of action accrues, he may "bring it within the prescribed limitation period after such disability is removed"). That is, the limitation period begins to run upon an infant reaching age 18. Here, Plaintiffs filed this action on May 15, 2007, and assert in their brief in opposition that they "brought their claims exactly within two years of [p]laintiff Norwood reaching majority" which indicates that Norwood turned 18 on May 15, 2015. Thus, because Norwood was a minor when her causes of action accrued (i.e. when she left Oak Hill Academy in December 2014), she had one year after reaching age 18 to file her ADA claims, or until May 15, 2016. However, plaintiffs did not file their complaint until May 15, 2017. Accordingly, I conclude that plaintiffs' ADA claim is barred by the statute of limitations and will recommend that it be dismissed with prejudice.

Oak Hill also asserts that the court should dismiss the complaint because plaintiffs failed to comply with the requirement that a claimant either commence an action under the ADA or notify defendants by mail of the nature of the claim "within 180 days of the occurrence of the

---

[6] The ADA itself does not specify a statute of limitations; thus, district courts look to analogous state statutes of limitations to find the one most applicable to the ADA. See 42 U.S.C. § 1988; Wilson v. Garcia, 471 U.S. 261, 266, 268 (1985).

5

alleged violation." Va. Code § 51.5–46(B). This argument is not persuasive, as I conclude that the Virginia notice requirement is not applicable to federal claims under the ADA. See J.S. ex rel. Duck v. Isle of Wight Cty. Sch. Bd., 402 F.3d 468, 479 (4th Cir. 2005) (holding that the application of the Virginia notice requirement to plaintiff's federal claim under the Rehabilitation Act would contravene the Supremacy Clause, and "therefore § 1988 does not authorize the borrowing of the notice provision in this case."); but see Childress, 5 F. Supp. 2d at 389 (applying the 180-day notice requirement under Va. Code § 51.5–46(B) to a student's ADA and Federal Rehabilitation Act claims against a university).

### B. Failure to State a Claim

(1) ADA Claim

Plaintiffs bring their ADA claim under Title III, which prohibits discrimination on the basis of disability by places of public accommodation, stating:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).[7] Under the ADA, disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." Id. § 12102(1). Discrimination is defined as "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals

---

[7] "The [ADA] prohibits discrimination against persons with disabilities in three major areas of public life: employment, under Title I, 42 U.S.C. §§ 12111–12117; public services, under Title II, 42 U.S.C. §§ 12131–12165; and public accommodations, under Title III, 42 U.S.C. §§ 12182–12189." A Helping Hand, LLC v. Baltimore County, Md., 515 F.3d 356, 361 (4th Cir. 2008) (citing Tennessee v. Lane, 541 U.S. 509, 516-17 (2004)).

6

with disabilities. . . ." Id. § 12182(b)(2)(A)(ii). Further, the ADA defines "denial of participation" in a program offered by a place of public accommodation to be an act of discrimination. Id. § 12182(b)(1)(A)(i). Private secondary schools such as Oak Hill are specifically enumerated as public accommodations that are covered by the ADA. Id. § 12181(7)(J).

To state a claim under Title III, a plaintiff must allege: (1) that she is disabled within the meaning of the ADA; (2) that defendant owns, leases, or operates a place of public accommodation; and (3) defendant discriminated against her by denying her a full and equal opportunity to enjoy services provided at such place of public accommodation. See Blue v. Cumberland Cty., No. 5:14-CV-86-FL, 2015 WL 164722, at *2 (E.D.N.C. Jan. 13, 2015); See also Robertson v. Foster, No. CV ELH-16-3610, 2017 WL 1104664, at *5 (D. Md. Mar. 23, 2017). The Fourth Circuit has held that, in the context of a student excluded from an educational program, to show a violation of Title III of the ADA, the student must establish that (1) she has a disability, (2) she is otherwise qualified to participate in the defendant's program, and (3) she was excluded from the program on the basis of her disability. See Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461–62 (4th Cir. 2012) citing Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir.2005) (applying the Rehabilitation Act and Title II of the ADA). The ADA requires only that the disability was "a motivating cause" of the exclusion. Id. citing Baird ex rel. Baird v. Rose, 192 F.3d 462, 468–69 (4th Cir.1999).

(a) Disability under the ADA

Oak Hill argues that plaintiffs have not sufficiently pleaded that Norwood's ADHD and episodic psychotic depression are disabilities under the ADA, specifically that these impairments restrict any of Norwoods "major life activities." Beyond stating that they have alleged that

7

"[Norwood] is a disabled individual as defined by 42 U.S.C. § 12102 which specifically states that she is limited in a major life activity," plaintiffs do not explain in their response how they have alleged that Norwood's ADHD and depression restrict her ability to perform a major life activity. Pl.'s Br. at 3, Dkt. No. 9.

A number of cases have held that ADHD and depression may qualify as disabilities under the ADA; however, plaintiffs here have not met their burden of alleging that Norwood's impairments restricted her ability to perform a major life activity.[8] See Lipscomb v. Techs., Servs., & Info., Inc., No. CIV.A. DKC-09-3344, 2011 WL 691605, at *13 (D. Md. Feb. 18, 2011) (noting that ADD has been recognized as an impairment under the ADA, but finding that for a plaintiff's impairments to qualify as a disability under the ADA plaintiff must show they "restricted his ability to perform a major life function in comparison to most people") citing Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 506–09 (7th Cir.1998) and Price v. Nat'l Bd. of Med. Exam'rs, 966 F.Supp. 419, 427–28 (S.D.W.Va.1997).

Because plaintiffs fail to allege facts showing that Norwood is disabled within the meaning of the ADA, including how her ADHD and depression restrict her ability to perform a major life activity, I recommend that Count I of the complaint be dismissed for failure to state a claim under Rule 12(b)(6).

(b) Discrimination based on disability

Oak Hill further argues that plaintiffs have failed to allege that Norwood was excluded from a program because of her disabilities, characterizing plaintiff's complaint as a "list of generalized grievances with no logical connection to Norwood's alleged impairments." D.'s Br.

---

[8] Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, thinking, communicating, interacting with others, learning, and working. See 29 C.F.R. § 1630.2(i)

8

in Supp. of Mot. to Dismiss at 6, Dkt. No. 4. In response, plaintiffs assert that they are not required to "specifically plead that she was discriminated against because of her disability" but rather that it is sufficient that she alleged she was "taken off the soccer t[eam], treated badly and not allowed to opt out of her finals . . ., [and] denied permission to go to the doctor because Oak Hill's teachers did not like her because she is disabled." Pl.'s Reply Br. at 2–3, Dkt. No. 9.

A plaintiff seeking relief under Title III must make a causal connection between the alleged discrimination and the individual's disability. See Bowers v. Nat'l Collegiate Athletic Ass'n, 118 F. Supp. 2d 494, 517 (D.N.J. 2000), opinion amended on reargument, 130 F. Supp. 2d 610 (D.N.J. 2001). See Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461–62 (4th Cir. 2012) (as distinguished from the Rehabilitation Act, which requires plaintiff to establish he was excluded "'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion"); Thomas v. Salvation Army S. Territory, 841 F.3d 632, 641 (4th Cir. 2016); see also Pinkerton v. Spellings, 529 F.3d 513, 519 (5th Cir. 2008) (quoting Soledad v. U.S. Dep't of Treasury, 304 F.3d 500, 503–04 (5th Cir. 2002)) ("Under the ADA, 'discrimination need not be the sole reason for the adverse employment decision, [but] must actually play a role in the employer's decision making process and have a determinative influence on the outcome.'). Thus, plaintiffs must sufficiently allege that Norwood's disability was a motivating cause of her discrimination in services or exclusion from an Oak Hill program.

This, plaintiffs have failed to do. In the complaint, plaintiffs assert that Norwood was removed from the soccer team for an unidentified disciplinary reason, and that Oak Hill refused to reinstate her despite being aware of her impairments, as well as other perceived insults and injustices by Oak Hill staff. These actions allegedly resulted in an exacerbation of Norwood's depression, and Tate's decision to remove Norwood from the school. However, plaintiffs do not

9

adequately allege that Oak Hill discriminated against Norwood because of her alleged disabilities. This distinguishes the instant case from Baird ex rel. Baird, where the Fourth Circuit found the plaintiff's complaint sufficiently alleged that she was discriminated against because of her depression when she was excluded from participation in her middle school show choir. 192 F.3d 462. Under the facts alleged in Baird ex rel. Baird, plaintiff's exclusion from show choir did not occur until after the choir director had been informed of her depression, and the choir director "expressly relied, at least in part, on [plaintiff's] depression in determining that she could not participate in show choir." Id. at 467.

As Oak Hill points out in its brief, instead of making a clear allegation that Oak Hill discriminated against Norwood because of her ADHD and depression, plaintiffs "appear to complain that the [objected to] actions were taken *despite* her alleged disabilities." D's Br. at 7, Dkt. No. 4. However, to the extent that plaintiffs assert that Oak Hill failed to provide reasonable accommodations for Norwood, they have failed to allege sufficient facts in support.

Under Title III, discrimination includes failing to make "reasonable modifications in policies, practices, or procedures" to accommodate disabled individuals, unless the modifications would "fundamentally alter the nature" of the services. 42 U.S.C. § 12182(b)(2)(A)(ii); see also Hoppe v. Coll. of Notre Dame of Maryland, 835 F. Supp. 2d 26, 31 (D. Md. 2011). In the context of higher education, a plaintiff alleging failure to accommodate under Title III of the ADA or Section 504 of the Rehabilitation Act must establish that she: (1) is disabled; (2) is "otherwise qualified" academically; and (3) requested a reasonable accommodation that would not fundamentally alter the nature of the defendant's service. Plaintiffs' complaint fails to allege any reasonable accommodations requested by either Norwood or Tate.

      (2) Breach of Contract

Plaintiffs allege, without explanation, that Oak Hill breached the "implied covenant of good faith and fair dealing" and also breached its contract with plaintiff by "inadequate performance." Oak Hill asserts that plaintiffs' breach of contract claim should be dismissed because they have not set out any facts to support the breach of any specific contract provision.

"Under Virginia law, 'the essential elements of a cause of action for breach of contract are: (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that right or duty, and (3) a consequential injury or damage to the plaintiff.'" [9] Albanese v. WCI Communities, Inc., 530 F.Supp.2d 752, 760 (E.D.Va.2007) (quoting Westminster Investing Corp. v. Lamps Unlimited, Inc., 379 S.E.2d 316, 317 (Va. 1989)). Plaintiffs allege in the complaint that under the contract, Tate agrees to grant Oak Hill personnel the right of *in loco parentis* for the period of enrollment and agrees to indemnify the school for any costs or expenses incurred on Norwood's behalf. See Compl. ¶ 16; Admissions Contract ¶ 4, Ex. 1 to Compl. Even assuming the role of *in loco parentis* provides for heightened duties toward Norwood, plaintiffs do not adequately identify these duties, nor how Oak Hill breached them. See Dillon v. Maryland-Nat'l Capital Park & Planning Comm'n., 382 F. Supp. 2d 777, 786 (D. Md. 2005), aff'd sub nom. Dillon v. Maryland-Nat'l Capital Park & Planning Comm'n, 258 Fed. App'x 577 (4th Cir. 2007) citing Niewiadomski v. United States, 159 F.2d 683, 686 (6th Cir.1947) (in its generally accepted common law meaning the term *in loco parentis* embodies "the two ideas of assuming the parental status and discharging the parental duties" without going

---

[9] Virginia law applies to the claim for breach of contract. See Harmon v. Dyncorp Int'l, Inc., No. 1:13CV1597 LMB/TRJ, 2015 WL 518594, at *12 (E.D. Va. Feb. 6, 2015), aff'd, 624 Fed. App'x 104 (4th Cir. 2015) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941)) (a federal court exercising supplemental jurisdiction applies the choice of law rules of the forum state)); Equitable Trust Co. v. Bratwursthaus Management Corp., 514 F.2d 565 (4th Cir.1975) ("Under Virginia choice of law, the law of the place of performance governs questions concerning performance of a contract.").

through the formalities necessary to legal adoption). Significantly, Oak Hill has no duty under *in loco parentis* to exempt Norwood from certain rules or grant her every request. In fact, the converse is true, as the United States Supreme Court notes in Morse v. Frederick that, "[t]hrough the legal doctrine of *in loco parentis,* courts upheld the right of schools to discipline students, to enforce rules, and to maintain order." 551 U.S. 393, 413 (2007) (Thomas, J., concurring). Thus, the complaint fails to adequately specify what legal duty Oak Hill owed to plaintiffs, how it breached that legal duty, and the resulting damage.

In their response to the motion to dismiss, plaintiffs state, without explanation, that they have "alleged a series of discriminatory acts that establish Oak Hill's breach of the duty of good faith and fair dealing." Plaintiffs cite to Goodrich Corp. v. BaySys Techs., LLC, 873 F. Supp. 2d 736, 742 (E.D. Va. 2012) for the proposition that under Virginia law, every contract contains an implied covenant of good faith and fair dealing. Virginia law does recognize an implied covenant of good faith and fair dealing in certain contracts. See Skillstorm, Inc. v. Elec. Data Sys., LLC, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) citing Ward's Equip. v. New Holland N. Am., 493 S.E.2d 516, 520 (Va. 1997). However, "[g]enerally, such a covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." Ward's Equip., Inc., 493 S.E.2d at 520. Here, plaintiffs simply have not set forth sufficient allegations of breach of contract to withstand the motion to dismiss. Accordingly, I will recommend that count II of the complaint, for breach of contract, be dismissed without prejudice for failure to state a claim under Rule 12(b)(6).

Although I recommend that the breach of contract claim be dismissed without prejudice, I do not recommend that plaintiffs be given leave to file an amended complaint. Plaintiffs' complaint alleged federal question jurisdiction over the ADA claim and supplemental

12

jurisdiction over the contract claim. Compl. ¶ 11. While diversity of citizenship exists here, the ad damnum clause for the breach of contract action is $25,672, below the threshold of $75,000, exclusive of interest and costs, required under 28 U.S.C. § 1332(a) for diversity jurisdiction. See Compl. ¶¶ 1, 2, 5, and Count Two. Accordingly, the dismissal of the ADA claim will result in no subject matter jurisdiction in this court and I do not recommend the court exercise supplemental jurisdiction over the contract claim.

(3) Negligence

The complaint asserts that Oak Hill failed to "exercise reasonable care for the protection of [Norwood]." Compl. ¶ 25. In their response to the motion to dismiss plaintiffs assert that they adequately allege a claim for negligence because Oak Hill breached its duty to care for Norwood while she was at the school. Plaintiffs contend that Oak Hill acted "with a series of unfair acts," which aggravated Norwood's medical condition. Pl.s' Resp. to Mot. to Dismiss at 3–4, Dkt. No. 9. Oak Hill counters that plaintiffs have not alleged facts showing that Oak Hill failed to act in a reasonably prudent manner. D's Br. in Supp. of Mot. to Dismiss at 11, Dkt. No. 4.

The elements of a negligence claim in Virginia are (1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach. Talley v. Danek Med., Inc., 179 F.3d 154, 157–58 (4th Cir. 1999) (applying Virginia law and citing Locke v. Johns-Manville Corp., 275 S.E.2d 900 (Va. 1981) (superseded by statute on other grounds)). Negligence is the failure to exercise the degree of care that a reasonable person would exercise under the same circumstances. Moore v. Virginia Transit Co., 50 S.E.2d 268, 271 (Va. 1948) (citation and internal quotation marks omitted).

13

The Supreme Court of Virginia has held that adults who agree to supervise and care for a child owe a duty in tort to exercise reasonable care in the supervision and care of that child. See Kellermann v. McDonough, 684 S.E.2d 786, 790 (2009). The supervising adult, however, is "not an insurer of the child's safety" but rather must discharge his duties as a reasonably prudent person would under similar circumstances. Id. Here, however, plaintiffs do not allege that Oak Hill's actions jeopardized Norwood's safety, but rather that it treated her unfairly. The complaint does not adequately allege that Oak Hill breached its *in loco parentis* duties regarding Norwood, and does not state a claim for negligence under the reasonable person standard of care. Further, Virginia follows the intra-family immunity rule which, with some exceptions, provides that an unemancipated minor child cannot maintain an action against his parent to recover for personal injuries caused by the parent's negligence. Smith v. Kauffman, 183 S.E.2d 190, 192 (1971) citing Norfolk Southern R.R. v. Gretakis, 174 S.E. 841 (1934). Those standing *in loco parentis* are likewise protected from negligence actions by the intra-family immunity rule. Lyles v. Jackson, 223 S.E. 2d 873 (1976). Thus, I conclude that plaintiffs have failed to state a claim for negligence and I recommend that count III be dismissed for failure to state a claim under Rule 12(b)(6).

## II. Oak Hill's Motion for Summary Judgment

### A. *Res Judicata*

Oak Hill moves for summary judgment, arguing that Plaintiffs' claims are barred by *res judicata*, due to the adverse judgment in the Circuit Court for Grayson County, Virginia, entered on April 10, 2017, which included legal claims and factual allegations arising from the same transaction or series of transactions. Plaintiffs filed a complaint (the "state court complaint") in the Grayson County Circuit Court on December 9, 2016, asserting only state law claims against

14

Oak Hill and several Oak Hill administrators. See Certified State Court Record, Ex. 1 to D.'s Br. in Supp. of Mot. for Summary Judgment, Dkt. No. 13-1. The allegations in the state court complaint involved events occurring during Norwood's 2014 fall semester at Oak Hill, and claims of negligence and breach of contract. Id. at 4–12. Defendants filed a demurrer to the negligence and breach of contract claims, a plea in bar on the grounds of contractual waiver of damages, statute of limitations, and parental immunity, and a motion to dismiss for failure to sign the pleadings. Id. at 21–29, 35–37. On April 10, 2017, the Grayson County Circuit Court sustained the defendants' demurrer with leave to amend as to plaintiffs' breach of contract claim only. Id. at 68–70. The state court "decline[d] to rule on the remaining demurrers and pleas in bar . . . ." Id. In its statement of undisputed facts, Oak Hill stated that plaintiffs failed to file an amended complaint within 21 days of the state court's order. D.'s Br. in Supp. of Mot. for Summ. J. ¶¶ 11–14, Dkt. No. 13. Plaintiffs respond that *res judicata* does not apply because the state court did not issue a final order dismissing the lawsuit, and thus "[t]here is no final judgment." Pls.' Resp. to Mot. for Summ. J. at 2, Dkt. No. 15. I conclude that because the state court order sustaining Oak Hill's demurrer with leave to amend did not contain dismissal language, it was not a final order, and therefore does not constitute *res judicata* as to future proceedings.

Virginia law controls whether an action filed and disposed of in Virginia state court will have any *res judicata* effect upon this action. Artis v. Norfolk & Western Ry., 204 F.3d 141, 147 (4th Cir. 2000); see also Laughlin v. Morauer, 849 F.2d 122, 126 (4th Cir.1988) ("[I]n a diversity case Virginia law governs the preclusive effect given to the judgment of a Virginia court."). Rule 1:6 of the Rules of the Supreme Court of Virginia addresses "*Res Judicata* Claim Preclusion," providing that:

15

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

Va. Sup. Ct. R. 1:6. Under Rule 1:6, Oak Hill must show that: (1) there was a prior claim for relief decided on the merits by a valid and final judgment; (2) the parties are identical or in privity with each other; and (3) the claim made in the later suit arises from the same conduct, transaction, or occurrence as the claim in the first suit. See Blick v. Long Beach Mortg. Loan Tr. 2005-WL3, No. 3:13-CV-00002, 2013 WL 1319369, at *2 (W.D. Va. Mar. 29, 2013), aff'd, 539 Fed. App'x 126 (4th Cir. 2013) (applying Virginia law).

In the April 10, 2017 order, the Grayson County Circuit Court sustained the defendants' demurrer with leave to amend as to plaintiffs' breach of contract claim only and declined to rule on the remaining demurrers and pleas in bar. See Certified State Court Record at 68–70, Ex. 1 to D.'s Br. in Supp. of Mot. for Summary Judgment, Dkt. No. 13-1. By letter attached to the April 10, 2017 order, the state court explained that it did not rule on the remaining claims because it had granted Norwood's motion for a nonsuit and Tate indicated at the hearing that she was not pursuing her negligence claims.[10] Id. at 95–96. Tate filed a motion for a non-suit on May 11, 2017, which defendants objected to on the grounds that the case had already been submitted for decision to the court. Id. at 71–74. Tate withdrew her motion to nonsuit on September 5, 2017. Ex. 2 to D.'s Br. in Supp. of Mot. for Summ. J., Dkt. No. 13-2.

---

[10] The state court granted Norwood's motion by order dismissing her action by voluntary nonsuit entered on March 31, 2017. Certified State Court Record at 67.

16

Whether the order entered on April 10, 2017 was as a final judgment on the merits is a key element in determining *res judicata*.[11] See Va. Sup. Ct. R. 1.6; see also Norris v. Mitchell, 495 S.E.2d 809, 812 (1998) (noting that a final order is "an essential element for the imposition of the doctrine of *res judicata*"); see also Carter v. Brooks, 77 Va. Cir. 363, n. 1 (2009) (noting that under Rule 1:6, "while an order sustaining a demurrer is a decision on the merits, it does not, without also containing dismissal language making the order final, constitute *res judicata* as to future proceedings"). Virginia Supreme Court Rule 1:1 provides:

> All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer. (. . .) The date of entry of any final judgment, order, or decree shall be the date it is signed by the judge . . . .

Va. Sup. Ct. Rule 1:1.

The Supreme Court of Virginia has held that, "[A]n order that sustains a demurrer and dismisses the case if the plaintiff fails to amend his motion for judgment within a specified time becomes a final order upon the plaintiff's failure to file an amended motion within the specified time." Berean Law Group, P.C. v. Cox, 528 S.E.2d 108, 111 (2000).[12] However, that is not the situation here. The April 10, 2017 state court order sustained the defendants' demurrer to the breach of contract claim with leave to amend, but did not include any language dismissing the

---

[11] In the state court case, defendants' responded to Tate's motion for a nonsuit by arguing that "Under Rule 1:1, the Court's judgment became final 21 days [after entry]" and Tate "did not amend her pleading before the Court's judgment became final." Ex. 1 to Oak Hill's Br. in Supp. of Mot. for Summ. J. at 73, Dkt. No. 13-1. However, because Tate withdrew her motion for nonsuit, the state court did not rule on this issue.

[12] In Berean Law Group, P.C. v. Cox, the specific language the state trial court used in sustaining the demurrer was:

> It is ORDERED that the Demurrers to the Motion for Judgment filed on behalf of [the defendants] be, and ... hereby are, SUSTAINED and that plaintiff's action against [the defendants] shall STAND DISMISSED unless on or before September 17, 1998, the plaintiff shall file an Amended Motion for Judgment which is sufficient in law, leave to file such an Amended Motion for Judgment being hereby GRANTED."

528 S.E.2d at 110. Apparently, the order granting leave to file an amended motion for judgment was entered on September 24, 1998, but ordered that plaintiff shall file an amended motion for judgment by September 17, 1998. Id.

case, or giving the plaintiff a specified deadline by which to amend her claim. Certified State Court Record at 68, Ex. 1 to D.'s Br. in Supp. of Mot. for Summ. J., Dkt. No. 13-1.[13] The Supreme Court of Virginia made in clear in Norris v. Mitchell that, "If the order merely sustains such a demurrer, it is not a final order; to be final, it must go further and dismiss the case." 495 S.E.2d 809, 810 (Va. 1998) citing Bibber v. McCreary, 73 S.E.2d 382, 383 (Va. 1952) ("This court has consistently held that an order merely sustaining or overruling a demurrer to a declaration or motion for judgment is not final. An order sustaining such a demurrer, in order to be final within the meaning of [the Code] must go further and dismiss the case."). Further, "if the order also gives the plaintiff leave to amend, it does not become final 'until after the time limited therein for the plaintiff to amend his bill has expired.'" Norris, 495 S.E.2d at 810; Cox, 528 S.E.2d at 111 (noting "we held in Norris that the circuit court's written order that gave the plaintiffs leave to file an amended motion for judgment could not have become final until the [deadline for filing an amended motion for judgment, and t]hus the circuit court had 21 days after that deadline to modify, vacate, or suspend its order . . . ."); see also Sue v. Sung Hoon Park, 70 Va. Cir. 113, *6 (2005) (noting the language in a "myriad decisions of the Supreme Court of Virginia" that "an order sustaining a demurrer must also dismiss the case for it to be a final order, even if leave to amend is granted and no amended pleadings are filed within the time frame set out in the order"); see also Paschall v. CBS Corp., No. 3:11CV431-HEH, 2011 WL 4345283, at *4 (E.D. Va. Sept. 15, 2011) ("In cases wherein an order sustains a demurrer and

---

[13] The state court order provided, in pertinent part, as follows:

> The court heard the Defendant's demurrer and the response of the Plaintiff. For the reasons contained in the letter attached hereto and made a party hereof as Exhibit A, the court sustains the Demurrer to the Breach of Contract Claim with leave to amend. The court declines to rule on the remaining demurrers and pleas in bar as the Plaintiff has abandoned those aspects of her action.

Certified State Court Record at 68.

also provides a plaintiff with leave to amend, the order of dismissal only becomes final if and when the plaintiff fails to amend her complaint within the *specified* time.) (emphasis added); see also Whalen v. Rutherford, No. 3:12CV00032, 2012 WL 6473151, at *4–5 (W.D. Va. Dec. 13, 2012).

Applying Virginia's *res judicata* doctrine, the April 10, 2017 state court order was not a final order as required by Rule 1:6 and thus, I conclude that plaintiffs' current claims are not barred by the doctrine of *res judicata*. Accordingly, I recommend that Oak Hill's motion for summary judgment be denied.

### RECOMMENDED DISPOSITION

Accordingly, it is **RECOMMENDED** that an order be entered granting defendant's motion to dismiss and dismissing the complaint. I conclude that any attempt to amend the ADA claim would be futile as that claim is time barred, and that that ADA claim (count I) should be dismissed with prejudice. I likewise conclude that, because plaintiffs have not alleged a separate and independent legal duty owed by defendant under the common law, the negligence claim (count III) should be dismissed with prejudice. I conclude that the breach of contract claim (count II) should be dismissed without prejudice; however, I also recommend that plaintiffs not be given leave to file an amended breach of contract claim, as this court should not exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). It is **FURTHER RECOMMENDED** that an order be entered denying defendant's motion for summary judgment.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record and *pro se* parties. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which

must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by me, may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

        Entered:  December 22, 2017

        *Robert S. Ballou*

        Robert S. Ballou
        United States Magistrate Judge